UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **DERRICK DUKES** | * | **CIVIL ACTION NO. 18-0433 SECTION P** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **SHERIFFS OFFICE WEBSTER PARISH, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment filed by defendants John Lewis and Jerry Ray ("Defendants") [doc. # 33]. The motion is unopposed. For reasons set forth below, it is recommended that the motion be **GRANTED**.

## Background

Plaintiff Derrick Dukes, proceeding pro se and *in forma pauperis*, is an inmate in the custody of Louisiana's Department of Corrections. On March 29, 2018, he filed the above-captioned lawsuit pursuant to 42 U.S.C. § 1983 against "Sheriffs Office Webster Parish," John Lewis, and Jerry Ray. [doc. # 1]. Dukes alleges that, on or about February 28, 2018, he was fired from his position at the auto shop at the Bayou Dorcheat Correctional Center ("BDCC") because he is a Muslim and a part of Islam. He claims that prior to his termination, Defendant Ray, a lieutenant at BDCC, stated that he did not want Dukes at the auto shop because he was a Muslim. Further, Dukes claims that Defendant Lewis, the warden at BDCC, passed down orders to confine Dukes in a cell twenty-four hours per day for fifty-eight days in March and April of 2018 and deprive him of his rights. Dukes alleges that he spent eight of those days in freezing temperatures with only a steel bed, no clothes, no lighting, no recreation, and cold food, which

caused back pain, hypothermia, constipation, sleep deprivation, hallucinations, and "prayer disruption." [docs. # 1, 6].

This Court conducted a preliminary screening of Dukes' Complaint pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2) and dismissed his claims against "Sheriffs Office Webster Parish." [docs. # 7, 13].

On December 14, 2018, Defendants filed the instant motion for summary judgment to dismiss Dukes' suit in its entirety. Defendants claim that Dukes' suit should be dismissed because Dukes (1) has failed to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a); (2) has no claim against Defendants in their official capacities as a matter of law; and (3) cannot demonstrate a genuine dispute of material fact for any individual capacity claim. [doc. # 33]. Dukes did not file a response to the motion.[1] Defendants filed a reply on January 14, 2019. [doc. # 41]. This matter is ripe.

## **Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact-finder could render a verdict for the nonmoving party. *Id.*

---

[1] Dukes submitted a letter to the Court, dated January 10, 2019, claiming prison officials are violating regulations by reading his mail and withholding letters he sent to his family without notifying him. He requests the Court notify Internal Affairs of the violations as well as provide him with a transfer order. [doc. # 42]. Neither of these requests are responses to Defendants' motion for summary judgment nor related to the instant action.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). The moving party may meet its burden "by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the nonmoving party is then unable to point to anything in the record to support its claim, summary judgment is appropriate. *Id.*

When considering the evidence in a motion for summary judgment, the court will resolve factual disputes in favor of the nonmoving party, but "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (citations omitted). The court will not assume without proof that the nonmoving party could prove the necessary facts. *Id.* In such a situation, there is no genuine dispute as to a material fact and the moving party is "entitled to a judgment as a matter of law," because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

## Discussion

### I. Exhaustion Requirement

Pursuant to 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

3

facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory "even when the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The requirement "applies to all inmate suits about prison life" as well as claims against defendants in their official and individual capacities. *Shabazz v. Wyles*, No. CV 18-0124, 2018 WL 3653303, at *3 (W.D. La. July 12, 2018) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Proper exhaustion also requires that an inmate comply with administrative deadlines and procedural rules. *See Woodford*, 548 U.S. at 90–92.

An inmate is required to exhaust only "available" administrative remedies, meaning those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (citations omitted). The Supreme Court has recognized three circumstances in which an administrative procedure is not capable of use to obtain some relief, which excuses an inmate's duty to exhaust: (1) officers are unable or unwilling to provide relief to aggrieved inmates; (2) an administrative scheme is so opaque that no ordinary prisoner can discern its requirements; and (3) prison administrators use "machination, misrepresentation, or intimidation" to thwart inmates from utilizing the grievance process. *Id.* at 1859–60.

Ignorance of a prison's administrative grievance process is no excuse for noncompliance. *Shabazz*, 2018 WL 3653303, at *4. However, a prisoner should have an "avenue[] for discovering the procedural rules governing their grievances." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). If an inmate cannot verify the administrative grievance process, misleading statements by prison officials may render remedies unavailable. *Id.*

An inmate must pursue the grievance process to its conclusion before filing a lawsuit. *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015). Thus, if a prison fails to timely respond at one

4

step in the grievance process, an inmate must move on to the next step. *Id.* Only if the prison fails to respond at the last step of the grievance process may an inmate file suit. *Id.* "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267.

The purpose of the exhaustion requirement is to afford "officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525. Although Section 1997e(a) does not specify the detail required for an administrative grievance, a grievance is sufficient if it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). This will likely depend on the type of complaint. *Id.* For example, an inmate claiming a guard acting improperly is expected to identify the guard and when the incident occurred. *Id.* In contrast, an inmate complaining about his cell conditions may not be required to identify any individuals in order to alert administrators to the problem. *Id.* In deciding whether a grievance constitutes sufficient notice, the prison system's rules regarding grievances also provide guidance. *Id.*

Since exhaustion is an affirmative defense, the defendant bears the burden of establishing that the plaintiff failed to exhaust available administrative remedies. *Dillon*, 596 F.3d at 266.

**II.    Analysis**

According to Defendants, the Louisiana DOC has a set of Basic Jail Guidelines for State Offenders Housed in Local Jail Facilities (2011) ("Basic Jail Guidelines"). (MSJ at 6, [doc. # 33-1]). The grievance process, as described in Section VI-B-002 of the Basic Jail Guidelines, provides the following:

5

> Offenders have reasonable access to a grievance remedy procedure that includes at least two levels of review if necessary. The grievance remedy procedure shall be an administrative means through which an offender may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. Such complaints and grievances include, but are not limited to, actions pertaining to conditions of confinement, personal injuries, medical complaints, time computations, the classification process, or challenges to rules, regulations, or policies. Through this procedure, offenders shall receive reasonable responses within a specified time period and where appropriate, meaningful remedies.

(Ex. 1 at 68–69, [doc. # 33-5]).

Additionally, Defendants claim that BDCC "has a Grievance Screening procedure setting forth the procedure for 'Step 1' administrative grievances." (MSJ at 6). Upon receipt of a grievance, a screening officer screens "all requests prior to assignment to the First Step. The screening process should not unreasonably restrain the offender's opportunity to seek a remedy." (Ex. 1 at 81). The screening officer is required to "furnish the offender with notice of the initial acceptance or rejection of the request to advise that his request is being processed or has been rejected." (*Id.*) A grievance can be rejected for several reasons, such as if the request is untimely or there is a separate procedure to handle the grievance. If a grievance is accepted, the inmate is furnished with a First Step Response form to continue in the procedure. (*Id.* at 81–82).

It is unclear whether BDCC complies with the two-step Administrative Remedy Procedure ("ARP") required by the Basic Jail Guidelines. (*See* MSJ at 8). However, the undisputed evidence demonstrates there is at least an initial procedure, whereby an officer screens and responds to an inmate's request and provides the inmate with a First Step Response form if applicable. (Ex. 1 at 81–82).

Dukes does not dispute that there was a grievance procedure in place at the time of the alleged incidents. Defendants note that Dukes signed forms acknowledging that he was informed of the ARP in place at the Caddo Parish Correctional Center, the facility in which he was housed

before being transferred to BDCC, and was instructed of the process for using the ARP. (MSJ at 2; Ex. 1 at 9, 11). Once transferred to BDCC, Dukes acknowledged he received a copy of the Louisiana Department of Public Safety & Corrections Disciplinary Rules & Procedures for Adult Offenders. (Ex. 1 at 7).

Further, in support of its motion, Defendants submit an affidavit from Delores Dooley who testified that she is the Deputy for Webster Parish Sheriff and maintains and keeps inmate records at BDCC. (Ex. 1 at 1). She provided copies of Dukes' inmate record, which includes "inmate grievances filed by Derrick Dukes during the time he was incarcerated at" BDCC. (*Id.* at 1). She testified that "[t]hese records were prepared, kept, and maintained in the normal course of business." (*Id.* at 1–2). Dukes' inmate records contain grievances regarding unrelated incidents, which prison officials responded to. (*Id.* at 3–5). There is no record of a request for a grievance remedy regarding the allegations in this suit. (*See id.* at 1–14).

In his Complaint, Dukes admitted that he did not file an administrative grievance based on the same facts that form the basis of this suit. [doc. # 1 ¶ II.b]. He explained that he did not file a grievance because "the prison grievance does not have step 2 or 3 and the Defendant is the Administrative Officer." (*Id.*) He also attached a blank grievance form to his pleadings and wrote on it "This is the only grievance we receive. We are told that there [sic] no step 2 or 3." [doc. # 1-2]. On review, Dukes' reasons for failing to file a grievance are unavailing.

First, BDCC's failure to have a step two or three does not excuse Dukes from proceeding with step one. To satisfy the exhaustion requirement, an inmate must proceed with each step of the administrative process and may only file suit if the prison fails to respond at the last step. *See Wilson*, 776 at 301. Given that BDCC has an initial step, there is an available administrative

remedy, which Dukes must exhaust. Thus, at a minimum, Dukes was required to submit a grievance.

Second, Dukes was not excused from submitting a grievance simply because Warden Lewis is also the administrative officer. The exhaustion requirement is strictly construed and excused only in limited circumstances, none of which apply here. *See Ross*, 136 S. Ct. at 1859–60. Dukes has not alleged that the ARP is opaque or that prison officials, including Warden Lewis, are unwilling to provide relief or thwart prisoners from utilizing the grievance process.

Section 1997e(a) contains no requirement that the "administrative procedures must satisfy certain 'minimum acceptable standards' of fairness and effectiveness before inmates can be required to exhaust them," nor do courts have "discretion to excuse exhaustion when it would not be 'appropriate and in the interests of justice.'" *Booth v. Churner*, 532 U.S. 731, 740 n.5 (2001). Dukes' apparent dissatisfaction with BDCC's administrative process does not render relief unavailable.

Defendants have demonstrated that BDCC does have available administrative remedies, and it is undisputed that Plaintiff made no attempt to file a grievance based on the incidents in question. Accordingly, there is no genuine dispute as to any material fact, and Defendants are entitled to summary judgment.

Because Dukes' claims should be dismissed on the grounds that he failed to exhaust available administrative remedies, the Court need not address Defendants' remaining arguments.

## **Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendants' unopposed motion for summary judgment [doc. # 33] be **GRANTED** and Plaintiff's claims be **DISMISSED** without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.[2]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 29th day of January 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[2] *Fitch v. LA Dept of Pub. Safety & Corr.*, No. CIV.A. 08-CV-1126, 2009 WL 1076749, at *3 (W.D. La. Apr. 20, 2009) (citing cases and dismissing Plaintiff's complaint with prejudice for the purpose of proceeding *in forma pauperis*).